**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 22-cv-22572-JLK

JOHN DAY,

Plaintiff,

v.

VARUN DATTA, SARANSH SHARMA,
and 4NEW LTD.,

Defendants.
_______________________________________/

**ORDER GRANTING DEFENDANTS VARUN DATTA AND 4NEW LTD.'S MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendants Varun Datta and 4New Ltd.'s Motion to Dismiss for Lack of Jurisdiction (the "Motion") (DE 42), filed September 11, 2023. The Court has also considered Plaintiff's response (DE 47), as well as Defendants' reply (DE 51). This matter is ripe for review.

## I. BACKGROUND

On August 12, 2022, Plaintiff filed his Complaint alleging, among other things, that Defendants made false statements in Florida that induced Plaintiff into exchanging valuable property for 4New's valueless cryptocurrency, KWATT. *See generally* Compl. Defendants then filed their first motion to dismiss, arguing that this Court lacked jurisdiction over Defendants. DE 9. Plaintiff then moved to conduct jurisdictional discovery (DE 13), which the Court granted (DE 16). At the conclusion of the jurisdictional discovery period, and after the Motion was fully briefed, the Court held oral argument on Defendants' motion. DE 38. At the conclusion of the hearing, the Court granted Defendants' motion to dismiss, but provided Plaintiff an opportunity to amend its

Complaint. DE 39. Plaintiff filed his Amended Complaint on August 11, 2023. DE 41. Plaintiff's Amended Complaint remains the operative complaint, alleging: Fraud (Count I); Civil Theft (Count II); and Unjust Enrichment (Count III).

Because this cause comes before the Court on a Motion to Dismiss, all facts in the Plaintiff's well-pleaded Amended Complaint are accepted as true and construed in the light most favorable to the Plaintiff. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the Plaintiff with all reasonable inferences from the allegations in the Complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

Plaintiff alleges that he relied on false statements made by Defendants when purchasing KWATT between August and December of 2018. Am. Compl. ¶ 6. Plaintiff is a resident of Indiana. *Id.* ¶ 13. Datta is a resident of the United Kingdom. *Id.* ¶¶ 14, 15. 4New is a limited company incorporated in the United Kingdom, where it also has its principal place of business. *Id.* ¶¶ 14–16. Specifically, Plaintiff's Amended Complaint alleges that Defendants Sharma and Datta appeared at the North American Bitcoin Conference in Miami, Florida on January 18 and 19, 2018, on behalf of 4New. *Id.* ¶ 25. During the conference, 4New had a booth, at which prospective investors may obtain additional information about 4New and its services, as well as join a waitlist to purchase 4New's KWATT cryptocurrency. *Id.* ¶ 26. Furthermore, Plaintiff alleges that during the conference, Sharma made a number of false statements on behalf of 4New, which were later adopted by 4New by virtue of being posted on 4New's website. *Id.* ¶ 25.

On February 8, 2018, Plaintiff alleges that Sharma, while living and working in Florida as President of 4New, made statements that were quoted in an online published press release. *Id.* ¶ 75. Plaintiff's Amended Complaint continues, alleging that during October 2017 and July 2018,

Sharma, while living and working in Florida as President of 4New created content that was published on 4New's website. *Id.* ¶ 76.

Thereafter, on July 23, 2018, Datta made a number of statements regarding 4New and its KWATT cryptocurrency which were published online by VentureBeat. *Id.* ¶ 78. Plaintiff alleges that Datta knowingly made these false statements "intending to portray 4New's KWATT cryptocurrency as unique and valuable and to persuade investors, including Day, to purchase KWATT." *Id.* Ultimately, Plaintiff alleges that he relied on these statements made by Sharma and Datta, as well as those published on 4New's website, when he first purchased 4New's KWATT cryptocurrency on August 21, 2018. *Id.* ¶ 77.

After completing his first KWATT purchase, Plaintiff began to communicate directly with Datta. *Id.* ¶ 79. Plaintiff alleges that, between August 2018, and June 2020, Datta spent five months living and working in Florida. *Id.* ¶ 79. Moreover, between August 2018 and June 2020, Plaintiff alleges that Datta made additional false statements to Plaintiff regarding 4New's KWATT cryptocurrency. *Id.* ¶¶ 79–80. In reliance on these communications from Datta, Plaintiff alleges that he "exchanged his valuable [Ethereum] for 4New's valueless KWATT over one hundred times between August 21, 2018, and January 3, 2019, and, as a result, [Plaintiff] lost his valuable property." *Id.* ¶ 80. In all, between the period of August 2018 and June 2020, Plaintiff alleges that he exchanged more than 500 text messages about 4New with Datta, all of which Plaintiff relied upon when purchasing KWATT. *Id.* ¶ 28.

On January 3, 2019, Plaintiff messaged Datta and stated, "You lied to me – directly" and demanded repayment of his investment in KWATT. *Id.* However, to this day, no repayment has been made. *Id.* Rather, Plaintiff alleges that between January 2019 and August 2019, Datta

continued to make false statements to Plaintiff about 4New to induce Plaintiff to not sell his KWATT cryptocurrency. *Id.* ¶ 70.

## II. LEGAL STANDARD

Under Federal Rule of Procedure 8(a)(2), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A defendant challenges personal jurisdiction by filing a motion under Federal Rule of Civil Procedure 12(b)(2). The challenge can be facial or factual. "[A] motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading." *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333 (M.D. Fla. 2009) (quoting *Walt Disney Co. v. Nelson,* 677 So. 2d 400 (Fla. Dist. Ct. App. 1996)). On a facial challenge, the Court accepts as true all allegations in the complaint and determines whether the plaintiff has met his burden of establishing a prima facie case of personal jurisdiction. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citations omitted). A prima facie case of personal jurisdiction is established where "the plaintiff alleges sufficient facts in his complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir.1982).

A factual challenge arises if the defendant includes affidavits or other evidence in support of the 12(b)(2) motion. Then, the question of personal jurisdiction is resolved by considering facts outside the four corners of the complaint. *Id.*

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted).

Florida's long-arm statute provides two ways in which a defendant can be subject to personal jurisdiction. *Carmouche*, 789 F.3d at 1203–04. "[F]irst, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida." *Id.* at 1204 (citing Fla. Stat. § 48.193(1)(a)). "[S]econd, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *Id.* (quoting § 48.193(2)). "If there is a basis for the assertion of personal jurisdiction under the state statute, [I] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Madara*, 916 F.2d at 1514 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (additional citations omitted)). The minimum contacts sufficient to comport with Due Process differ when assessing the exercise

of "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 529 U.S. 351, 358 (2021). The general jurisdiction provision of Florida's long-arm statute "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Therefore, when assessing this Court's exercise of general jurisdiction, "[I] need only determine whether the ... exercise of jurisdiction ... would exceed constitutional bounds." *Id.*

## III. DISCUSSION

4New and Datta argue in their Motion that this Court lacks jurisdiction in this cause, thus warranting dismissal of Plaintiff's Amended Complaint. *See* Mot. 4New makes only a facial challenge. Datta makes a factual challenge. The Court will address each argument in turn.

### A. Plaintiff has properly plead 4New committed a tort in Florida.

Among the acts that can give rise to specific personal jurisdiction is "[c]omitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Here, Count I alleges that defendants committed a fraud in Florida. "In Florida, before a court addresses the question of whether specific jurisdiction exists under [Fla. Stat. § 48.193(1)(a)(2)], the court must determine 'whether the allegations of the complaint state a cause of action.'" *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quoting *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)).

Under Florida law, the essential elements of common law fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation and internal quotations omitted).

More importantly, in cases where a plaintiff makes fraud-based claims, to be considered "well-pleaded," a plaintiff's complaint must meet the standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). Failure to satisfy Rule 9(b)'s pleading requirements amounts to a failure to state a claim under rule 12(b)(6) and requires dismissal of the complaint. *Id.; see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for any claim sounding in fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." . . . "This means the who, what, when where, and how: the first paragraph of any newspaper story."

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006); *see also Off. of Att'y Gen. Dep't of Legal Affs. v. Moving & Storage Acct. Inc.*, No. 18-CV-63144, 2019 WL 2255575, at *2 (S.D. Fla. Mar. 22, 2019), report and recommendation adopted sub nom. *Off. Of Att'y Gen. v. Moving & Storage Acct. Inc.*, No. 18-63144-CIV, 2019 WL 3429123 (S.D. Fla. May 1, 2019) ("These standards serve 'an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'") (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (internal quotations omitted)).

As an initial matter, the Court notes neither Plaintiff nor Defendants have argued whether the Amended Complaint sufficiently pleads fraud under Rule 9(b). Failure to raise this issue does not waive it because a Rule 9(b) challenge can be made up to, and at, trial. Fed. R. Civ. P.

12(h)(2)(A)-(C); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.,* 165 F. Supp. 3d 1340, 1346 (N.D. Ga. 2015) (citing *Brooks*,116 F.3d at 1368. Therefore, before the Court can analyze whether personal jurisdiction exists, it must examine each element of fraud individually to ensure that Plaintiff has adequately stated a claim.

**i. False Statement Concerning Material Fact**

Plaintiff alleges 4New published several false statements on its website, which Plaintiff claims he read and relied upon when purchasing KWATT. Am. Compl. ¶ 76. 4New published the following statements on its website: "With two operational Waste to Energy power plants generating 10 megawatts per hour and a third site identified for operation launch in 2019, 4New is poised to activate the blockchain ecosystem with its onsite mining farm this summer"; "With two operational power plants secured, 4New is poised to activate ecosystem"; Current electrical output capacity between two plants combined at launch is 10 megawatts per hour"; and "The coins represent electricity on the blockchain available for utilization by miners." Am. Compl. ¶ 76.

Plaintiff alleges that 4New's statements were false because 4New did not own "'two operation power plants' that were generating electrical output that was 'embodied within' the KWATT." Am. Compl. ¶ 76. Plaintiff also alleges that 4New did not have an "onsite crypto-mining farm" and that "KWATT coinholders could not "loan or stake their coins on a quarterly basis." Am. Compl. ¶ 76

When accepting all of the factual allegations plead in the Amended Complaint as true, and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has properly plead that 4New made false statements concerning material facts. Taken together, these are the type of statements an investor would rely upon when determining whether to invest in a cryptocurrency as the statements go to the likelihood an investor will see returns on his

cryptocurrency purchase. The statements display the position of 4New as a company offering a cryptocurrency and show the potential return on investment that could be made.

**ii. Knowledge that the Representation is False**

In the Amended Complaint, Plaintiff pleads that Sharma knew that the statements regarding 4New were false at the time they were made. 4New failed to raise any argument in its Motion that the statements published on its website were in fact true. *See generally* Mot.

Importantly, Plaintiff's Amended Complaint properly alleges that 4New had knowledge that the statements published on its website were false. The Amended Complaint alleges that 4New's website published statements that portrayed that 4New had two operational power plants and that 4New had an onsite crypto-mining farm. Am. Compl. ¶ 76. The Amended Complaint goes on to state that 4New did not in fact own two operation power plants, and 4New did not have an onsite crypto-mining farm. *Id.* The Court finds these allegations to be sufficient to plead that 4New had knowledge as to the falsity of these statements. As a company, 4New is imputed to have knowledge of the assets it does or does not own. Therefore, when viewed in the light most favorable to the Plaintiff, these facts sufficiently allege that 4New had knowledge that the statements were in fact false.

**iii. Other Elements of Fraud**

Plaintiff further alleges that these statements were made to induce investors, such as Plaintiff, to purchase KWATT. *Id*. Defendants do not argue to the contrary. As explained above in Section A.i., the statements on 4New's website are the kinds of statements that an investor would solicit when seeking a new cryptocurrency investment, and therefore, the kinds of statements someone would make to a potential investor to receive new investments. Viewed in the light most

favorable to Plaintiff, these false statements were made to induce Plaintiff into purchasing KWATT.

Plaintiff also alleges that he was injured by 4New's alleged fraud when Plaintiff exchanged his valuable Ethereum for 4New's KWATT. *Id.* ¶ 74. Defendants do not argue that Plaintiff fails to plead injury when he relied on the statements published on 4New's website. Therefore, Plaintiff has sufficiently plead it suffered an injury as a result of 4New's misrepresentations. The Court therefore finds, as outlined in this Section, that Plaintiff has sufficiently plead all of the elements of fraud under Florida law as to 4New.

**B. Personal Jurisdiction as to 4NEW**

**a. Whether Plaintiff has plead specific jurisdiction under Fla. Stat. § 48.193(1)(a)(2).**

Defendants argue that 4New is not subject to this Court's specific personal jurisdiction under Fla. Stat. 48.193(1)(a)(2) because Plaintiff's claims do not arise out of or relate to Defendant's contacts with Florida. Mot. at 15. Additionally, 4New argues that jurisdiction cannot be based on 4New's website because the website was informative. *Id.* at 16. In response, Plaintiff argues that this Court has jurisdiction over 4New because it carried on a business in the state of Florida, and it committed tortious acts in Florida. Resp. at 12–13. In reply, 4New argues that 4New had no contact with Florida other than through Sharma and Datta, and because there is no relation between Florida and the Plaintiff's claims, this Court lacks specific jurisdiction over 4New. Reply at 5–8.

Here, the Court finds that the Amended Complaint contains insufficient allegations to establish specific jurisdiction over 4New under Fla. Stat. 48.193(1)(a)(2). Plaintiff alleges in his Amended Complaint that 4New adopted a number of statements on its website made by Sharma,

while Sharma was living and working in Florida. Am. Compl. ¶ 76. Specifically, Plaintiff alleges that on June 5, 2018, 4New's website displayed the following statements:

- "1 KWATT Coin embodies within it 1 Kilowatt Hour of electrical output generated by then [sic] plant;"
- "With two operation power plants secured, 4New is poised to activate ecosystem;"
- Current electrical output capacity between two plants combined at launch is 10 megawatts per hour;"
- "with an onsite crypto-mining farm . . .;"
- "With two operational Waste to Energy power plants generating 10 megawatts per hour and a third site identified for operation launch in 2019, 4New is posed to activate the blockchain ecosystem with its onsite mining farm this summer;"
- "KWATT coinholders will be able to 'loan or stake their coins on a quarterly basis. The coins represent electricity on the blockchain available for utilization by miners;"
- "The KWATT token is based on the ERC-20 token standard and Ethereum-powered smart contracts."

*Id.* Plaintiff alleges that, after reading these statements, he decided to invest in 4New's cryptocurrency. *Id.* ¶ 77.

However, Plaintiff fails to allege that either he, or any resident in Florida accessed 4New's website. *See Volt, LLC v. Volt Lightning Group, LLC*, 369 F.Supp.3d 1241, 1246 (M.D. Fla. 2019) (stating that under Fla. Stat. 48.193(1)(a)(2), mere accessibility of a website in Florida is insufficient to subject non-residents to Florida's jurisdiction under the long-arm statute as the website must also be viewed in Florida); *see also Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1214 (Fla. 2010) (finding that "defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an 'electronic communication into Florida' when the material is accessed (or 'published') in Florida."). The Amended Complaint is silent as to whether the website was ever accessed by a Florida resident or if Plaintiff accessed the website while in Florida. Plaintiff has thus failed to properly plead a prima facie case that 4New committed a tort in Florida giving rise to jurisdiction.

**b. Whether Plaintiff has plead specific jurisdiction under Fla. Stat. § 48.193(1)(a)(1).**

Long-arm specific jurisdiction also exists over a defendant who "personally or through an agent [is] operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). 4New argues that it did not conduct business in Florida such that Florida's long-arm statute is satisfied. Mot. at 14–19. In response, Plaintiff argues that because Sharma and Datta were located in Florida at the time that they made the alleged fraudulent statements, 4New is subject to the Court's jurisdiction. Resp. at 14–16. In Reply, 4New argues that Plaintiff's claims bear no relationship with 4New's contacts with the State of Florida. Reply at 5–8.

"In order to establish that a defendant was carrying on a business or business venture in the state, . . . '[t]he activities of the [defendant] sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit.'" *Sculptchair, Inc. v. Century Arts Ltd.,* 94 F.3d 623, 627 (11th Cir. 1996) (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 564 (Fla. 1975)). Factors relevant to this inquiry include "the presence and operation of an office in Florida," "the possession and maintenance of a license to do business in Florida," "the number of Florida clients served," and "the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1167 (11th Cir. 2005).

"Florida courts have interpreted specific jurisdiction under Florida Statute § 48.193(1)(a)(1) to require 'connexity,' or 'a causal connection between the defendant's activities in Florida and the plaintiff's cause of action." *Doe (V.H.) v. Hyatt Hotels Corporation*, 23-13503, 2024 WL 3859882 at *1 (11th Cir. Aug. 19, 2024) (quoting *Canale v. Rubin*, 20 So. 3d 463, 466 (Fla. Dist. Ct. App. 2009). "Connexity requires a 'direct affiliation, nexus or substantial connection

to exist between the basis for the cause of action and the business activity." *Id.* (quoting *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. Dist. Ct. App. 1994) (internal quotation omitted). "Without connexity, a defendant's business activity in Florida is 'irrelevant.'" *Id.* (quoting *Banco de los Trabajadores v. Moreno*, 237 So. 3d 1127, 1137 (Fla. Dist. Ct. App. 2018) (per curiam)).

Plaintiff's Amended Complaint falls short of asserting that 4New had a "general course of business activity" in the state of Florida. Plaintiff fails to allege nearly any facts regarding 4New's business activity, the location of its offices, possession of business licenses, clients, or revenue, if any, in Florida.

In his Amended Complaint, Plaintiff only mentioned that individuals that attended the bitcoin conference in Miami, and had an interest in purchasing KWATT, could join a waitlist. Am. Compl.¶ 26. However, offering a waitlist to potentially purchase KWATT is insufficient to establish 4New was operating a business in Florida under Fla. Stat. § 48.1932(a)(1)(a). *See Horizon*, 421 F.3d at 1167–68 (finding Fla. Stat. § 48.193(1)(a)(1) was not satisfied even when the plaintiff alleged that the defendant generated 5% of its revenue from Florida clients). Other than attending a single trade show in Miami, at which 4New made no sales, 4New bears no connection with the State of Florida.

Moreover, Plaintiff fails to make any allegation that he attended the Conference in Miami. Rather, Plaintiff relies on his access to 4New's website to form the basis of jurisdiction in this case. Specifically, Plaintiff relies on the statements made at the Conference, and later published on the website, to establish jurisdiction is proper in the State of Florida. Am. Compl. ¶ 25. But this proves fatal to Plaintiff's jurisdictional arguments. Plaintiff was not present at the Conference; Plaintiff was not in Florida at the time he purchased KWATT; Plaintiff lives

in Indiana; Plaintiff was allegedly defrauded in Indiana; and Plaintiff did not access 4New's website in Florida. Thus, there is an insufficient connection between 4New's acts in Florida and Plaintiff's alleged injury, so this Court lacks specific jurisdiction over 4New under Section 48.193(1)(a)(1).

### C. Whether Datta is subject to this Court's specific jurisdiction

Defendants argue in their Motion that Datta is not subject to this Court's jurisdiction. Specifically, Defendants argue this Court lacks general jurisdiction over Datta because Datta is not domiciled in Florida, did not consent to this Court's jurisdiction, and was not served in Florida. *Id*. Defendants attached an affidavit from Datta to their Motion. Mot. at 1; DE 9-1. Plaintiff argues Datta is subject to this Court's specific jurisdiction because Datta committed a tortious act in the state of Florida, which is sufficient to satisfy Fla. Stat. 48.193(1)(a)(2). Resp. at 16–19. In reply, Datta argues that because Plaintiff did not allege specific jurisdiction as a basis of this Court's jurisdiction over him, Plaintiff has failed to plead a proper jurisdictional basis over Datta. Reply at 4–5.

Once again, because Plaintiff argues Fla. Stat. 48.193(1)(a)(2) as the basis for jurisdiction, this Court begins its analysis with whether Plaintiff's Amended Complaint states a cause of action against Datta for common law fraud. *See PVC Windoors, Inc.,* 598 F.3d at 808 ("In Florida, before a court addresses the question of whether specific jurisdiction exists under [Fla. Stat. § 48.193(1)(a)(2)], the court must determine 'whether the allegations of the complaint state a cause of action.'") (quoting *Wendt*, 822 So.2d at 1260). The Court must also evaluate whether the Amended Complaint complies with Rule 9(b). The Court answers this evaluation in the affirmative.

Datta made unequivocal statements of fact to Plaintiff. Plaintiff alleges in the Amended Complaint that Datta told Plaintiff "we have partnered with bitfury" and "everything is on track we are currently mining as we talk." Am. Compl. ¶ 79. Plaintiff further alleges that neither of these statements were true. *Id*. Additionally, based upon these statements, Plaintiff exchanged Ethereum for KWATT, to his detriment. *Id*. Defendants have not disputed either of these allegations by Plaintiff. Thus, when viewing those statements in the light most favorable to Plaintiff, the Court finds Plaintiff has adequately plead fraud under Rule 9(b).

Next, the Court turns to whether Plaintiff has adequately plead specific jurisdiction as to Datta. Plaintiff alleges that Datta made a number of false statements to Plaintiff to induce Plaintiff to purchase KWATT. *Id*. Plaintiff further alleges that Datta made a number of false statements to Plaintiff to induce Plaintiff to continue to hold his KWATT coins. *Id.* Plaintiff also alleges that during the time in which these statements were made, August 2018 to June 2020, Datta had spent five months in Florida. *Id.*

Yet, what is absent from Plaintiff's allegations is which statements Datta made while Datta was in Florida. Rather, Plaintiff only generally alleges that between August 2018 and June 2020, Datta made a number of statements to Plaintiff. Plaintiff also alleges that during that span, Datta spent five months living in Florida. But Plaintiff does not specify which of those months Datta spent in Florida. Thus, at best, Plaintiff has alleged that Datta made statements over a near two-year span, that induced him into purchasing KWATT, but fails to elicit which statement(s) were made in Florida. Furthermore, although Plaintiff alleges that Datta appeared at the Conference on behalf of 4New, Plaintiff does not provide the Court with any statements Datta made at the Conference which caused Plaintiff's alleged injury.

Datta avers in his affidavit the following:

- Any interactions Datta would have had with Plaintiff would have been within the scope of his duties as Chairman of 4New;
- Datta is not domiciled in Florida;
- Datta was not physically located in Florida at any time that he was in contact with Plaintiff;
- Datta never transacted any business in the state of Florida relating to Plaintiff; and
- Datta never transacted any business in Florida on behalf of 4New other than attending the North American Bitcoin Conference in Miami, which he attended in his role as Chairman of 4New.

*See generally* DE 9-1.

The Court has reviewed Datta's affidavit and finds that it properly refutes the allegations of Plaintiff's Amended Complaint that seek to establish specific jurisdiction over Datta. The burden thus shifts back to Plaintiff to counter Datta's affidavit. Plaintiff must do so by providing evidence, affidavits or documents.

"Where ... the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Internet Sols. Corp.*, 557 F.3d at 1295; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). If the defendant is able to make an adequate showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citation omitted).

Despite having been given jurisdictional discovery, Plaintiff failed to submit a rebuttal affidavit or any other evidence to contradict Datta's affidavit. Rather, Plaintiff relied on the unsworn allegations of its Amended Complaint, which is insufficient. *See Polskie Linie Oceaniczne*, 795 F.2d at 972 (reiterating factual allegations in plaintiff's amended complaint, without more, is insufficient to sustain burden of refuting a defendant's affidavit regarding the

exercise of jurisdiction). Thus, on this basis, Plaintiff has failed to carry his burden to show that Datta is subject to this Court's jurisdiction.

Plaintiff also argues that Datta is subject to this Court's jurisdiction because Datta conducted business on behalf of 4New. Resp. at 16. Plaintiff raises this argument to support the notion that his claims "relate to" one of the Defendants' contacts with the forum. *Id*. However, this argument confuses the analysis. Plaintiff's claims do not relate to Datta's contacts with the forum. Rather, Plaintiff's claims relate to 4New's contacts with the forum. Plaintiff's argument confuses the contacts with the forum analysis because his claim arose out of 4New's contacts with Florida, rather than Datta being located within Florida at the time. Moreover, Datta stated in his affidavit that he was not in Florida during any of his interactions with Plaintiff. Plaintiff has failed to refute this assertion.

Importantly, Datta states in his affidavit that he came to Florida in December of 2019. DE 9-1 ¶ 13. Plaintiff alleges in his Amended Complaint that he relied on Datta's statements from July 23, 2018, to August 2019. Am. Compl. ¶¶ 78–80. However, because Plaintiff has failed to refute Datta's assertion in his affidavit that he was not in Florida at any time he communicated with Plaintiff, the Court finds that exercising jurisdiction over Datta would be improper.

Plaintiff also alleges that Datta attended the Conference in Miami, Florida on January 18 and 19, 2018, on behalf of 4New. *Id*. ¶ 25. Plaintiff, however, has not provided the Court with any statements Datta made during that time that would "relate to" Plaintiff's alleged injury. Under these facts, exercising jurisdiction over Datta would be improper.

**D. Whether Datta is subject to this Court's general jurisdiction**

Datta argues that because he is not domiciled in Florida, this Court lacks general personal jurisdiction over him. DE 42 at 12. In response, Plaintiff argues that due to Datta's extensive

contacts with Florida, "it is reasonable to infer that Datta's true fixed home is in Miami, Florida." DE 47 at 19. In reply, Datta highlights that Plaintiff sets forth the incorrect standard for exercising general personal jurisdiction over an individual. DE 51 at 2.

Under Florida's long-arm statute, a court has general jurisdiction over a "defendant who is engaged in substantial and not isolated activity within this state … whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). As a matter of due process, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citations omitted). "Beyond [being domiciled in the forum], the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is constitutionally proper: where the individual consents to the forum's jurisdiction, and where the individual is present within the forum when served with process." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1350 (S.D. Fla. 2017) (alteration added; citations omitted).

Datta is not domiciled in Florida, was not served in Florida, and never consented to jurisdiction in Florida. Plaintiff's Amended Complaint alleges that Datta is a citizen of both India and the United Kingdom. Am. Compl. ¶ 15; *see also* DE 9-1 ¶ 3. Datta declares in his affidavit that he has never been a citizen of the United States, or a citizen of the State of Florida. DE 9-1 ¶ 4. Datta further declared in his affidavit that although he may own a residence in this jurisdiction, he does not intend to remain in Florida. DE 9-1 ¶ 17.

Plaintiff argues that Datta's contacts are so "extensive" that he is essentially at home in this state. DE 47 at 19. However, Datta's attenuated contacts fail to make Florida Datta's domicile. "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *McCormick v.*

*Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002) (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)). The record evidence does not show that Datta is a Florida domiciliary, rather, it shows the opposite. Thus, the limited contacts Plaintiff alleges Datta has with Florida are insufficient to give rise to jurisdiction over Datta.

But, even if Datta's contacts with Florida are arguably "substantial and not isolated[,]" these contacts have been found to fall short of being "continuous and systematic" to render Datta "essentially at home in the forum state" such that general jurisdiction may be exercised. *See Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1250-52 (S.D. Fla. 2015).

Datta maintains that he is not a resident of Florida. DE 9-1 ¶ 4. Additionally, Datta asserts that he was not residing or located within Florida during any of his interactions with Plaintiff. DE 9-1 ¶ 12. Moreover, Datta states that his only business in Florida in relation to 4New was attending the Conference, and otherwise has never conducted any business on behalf of 4New in Florida. DE 9-1 ¶ 21. Plaintiff fails to provide the Court with any evidence to the contrary. Rather, Plaintiff's response merely reasserts the allegations of Plaintiff's Amended Complaint, which Plaintiff argues establishes general personal jurisdiction over Datta. However, this is insufficient. Plaintiff has thus failed to properly set forth any facts that would subject Datta to this Court's general personal jurisdiction.

**E. Whether Plaintiff is granted leave to amend**

Lastly, the Court must consider whether to grant Plaintiff leave to amend. Federal Rule of Civil Procedure 15 states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In general, a plaintiff must be given at least one opportunity to amend a complaint. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "After a plaintiff's first opportunity to amend, leave for additional amendments may be denied because of 'undue

delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previous allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.'" *In Re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924-RLR, 2021 WL 2865869, at * 23 (S.D. Fla. July 8, 2021) (J. Rosenberg) (citing *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005)). Denial of leave to amend is justified by futility when the complaint as amended would still be subject to dismissal. *See, e. g.*, *Christman v. Walsh*, 416 Fed. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning the amended complaint would not survive a motion to dismiss.").

Plaintiff has already filed one Amended Complaint in this action. Plaintiff was also provided the opportunity to conduct limited jurisdictional discovery. At this juncture, the Court is unable to say whether further amendment would be futile. Therefore, the Court will permit Plaintiff the opportunity to seek leave to amend, if he so chooses.

## IV. CONCLUSION

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that:

1. Defendants 4New Ltd. and Varun Datta's Motion to Dismiss **(DE 42)** is **GRANTED**.
2. Plaintiff's Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE** as to Defendants 4New Ltd. and Varun Datta.
3. Plaintiff may, if he so chooses, seek leave to amend its Amended Complaint to cure the pleading deficiencies identified in this order on or before October 30, 2024.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 30th day of September, 2024.

James Lawrence King
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: **All counsel of record**
**Clerk of Court**