UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-22572-RAR

**JOHN DAY**,

    Plaintiff,

v.

**VARUN DATTA**, *et al.*,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS VARUN DATTA AND 4NEW LTD.'S
RENEWED MOTION TO DISMISS**

**THIS CAUSE** comes before the Court on Defendants Varun Datta and 4New Ltd.'s Renewed Motion to Dismiss for Lack of Jurisdiction ("Motion"), [ECF No. 90], filed on June 16, 2025. Plaintiff filed a Response in Opposition to the Renewed Motion to Dismiss ("Response") on June 26, 2025, [ECF No. 91]. Defendants then filed a Joint Reply ("Reply"), on July 3, 2025, [ECF No. 92]. Having carefully considered the parties' relevant submissions, the record, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 90], is **GRANTED** for the reasons set forth herein.

**BACKGROUND**

**A. Factual Background**

Defendant 4New Ltd. ("4New") is a limited company that sells a cryptocurrency called "KWATT." Second Amended Compl. ("SAC"), [ECF No. 60] ¶¶ 2, 16. 4New is a British company with its principal place of business in London, United Kingdom. SAC ¶ 16. It was founded by Defendant Varun Datta ("Datta") in October 2017, and Datta was the Chairman of

4New from October 2017 through December 2021.  SAC ¶¶ 4, 16, 19.  In October 2017, Datta hired Defendant Saransh Sharma ("Sharma"), a Florida citizen, to work for 4New as its President.  SAC ¶ 20.

On August 21, 2018, Plaintiff John Day ("Day"), a resident of Indiana, purchased 4New's KWATT cryptocurrency.  SAC ¶¶ 13, 86.  Plaintiff acquired KWATT by transferring his ownership interest in Ethereum ("ETH") cryptocurrency for 4New's KWATT.  SAC ¶ 86.  Between August and December 2018, Plaintiff made multiple purchases of KWATT.  SAC ¶ 74.

Plaintiff alleges that Datta and Sharma made false statements of material fact about 4New's business and KWATT cryptocurrency "with the intent to deceive potential investors, including Day, and to persuade investors to purchase KWATT."  SAC ¶ 5.  Specifically, Plaintiff points to Datta and Sharma's appearance, on behalf of 4New, at the North American Bitcoin Conference in Miami, Florida in January 2018.  SAC ¶ 25.  During the Conference, 4New had a booth, at which prospective investors could obtain information about 4New and its services, as well as join a waitlist to purchase 4New's KWATT cryptocurrency.  SAC ¶ 26.  Plaintiff contends that during the Conference, Sharma made several false statements on behalf of 4New, which were later posted on 4New's website.  SAC ¶ 25.

Thereafter, Sharma, while living and working in Florida between October 2017 and July 2018, made various purportedly false statements about 4New's business and KWATT cryptocurrency; some were published in an online press release on February 8, 2018, and others were quoted on 4New's website on June 5, 2018.  SAC ¶¶ 84–85.  Plaintiff asserts that Datta similarly made false statements about 4New's business and KWATT cryptocurrency, which were quoted in an article that was published online on or about July 23, 2018.  SAC ¶ 87.  Plaintiff contends that he relied on these statements made by Sharma and Datta, as well as those published

on 4New's website, when he purchased KWATT for the first time on August 21, 2018. SAC ¶¶ 6, 25, 86, 89.

After completing his first KWATT purchase, Plaintiff began to communicate directly with Datta. SAC ¶ 88. From October 2018 to January 2019, Plaintiff alleges that Datta made additional false statements to Plaintiff regarding 4New's KWATT cryptocurrency. SAC ¶¶ 88–90. Relying on these communications with Datta, Plaintiff states that he "exchanged his valuable ETH for 4New's valueless KWATT over one hundred times between August 21, 2018 and January 3, 2019." SAC ¶ 89.

After these exchanges, Plaintiff soon concluded that many of Defendants' statements about 4New's business and KWATT cryptocurrency were false. SAC ¶ 77. And on January 3, 2019, Plaintiff messaged Datta, "[y]ou lied to me – directly" and demanded repayment for his investment in KWATT. SAC ¶ 78. Datta messaged Plaintiff: "I'm here and I will honour each and every commitment that I made to yourself and the other members." SAC ¶ 90.

However, from January 2019 through July 2020, Plaintiff alleges that Defendants continued to make false statements to Plaintiff and other KWATT investors to persuade them to hold onto their KWATT. SAC ¶¶ 79, 90. Specifically, Datta purportedly encouraged investors to not "dump" their KWATT by telling them he had secured funds that he could use to honor his obligations to investors by buying back their KWATT. SAC ¶ 90. Plaintiff continued to hold onto his KWATT in anticipation of such payments from Datta, but Plaintiff states that "Datta never had the funds necessary to buy back [Plaintiff's] KWATT and never made any payments to [Plaintiff]." SAC ¶ 96. As a result, Plaintiff suffered financial losses while Defendants retained possession of, used, or sold for their own benefit Plaintiff's valuable ETH cryptocurrency. SAC ¶¶ 96, 101.

### B. Procedural Background

On August 12, 2022, Plaintiff filed this action pleading fraud, civil theft, and unjust enrichment claims against Defendants. *See* Compl., [ECF No. 1]. On November 8, 2022, Datta and 4New filed a motion to dismiss for lack of personal jurisdiction. [ECF No. 9]. That same day, Sharma filed a motion to dismiss for failure to state a claim. [ECF No. 10]. Following jurisdictional discovery, the Court granted Defendants' motions to dismiss and allowed Plaintiff to amend his Complaint. [ECF Nos. 39 and 40].

On August 11, 2023, Plaintiff filed an Amended Complaint, [ECF No. 41], and Datta and 4New subsequently filed another motion to dismiss for lack of personal jurisdiction. [ECF No. 42]. Sharma also filed a motion to dismiss for failure to state a claim, [ECF No. 43], which the Court denied, [ECF No. 55], finding that Plaintiff had alleged his fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b). However, the Court granted Datta and 4New's motion to dismiss for lack of personal jurisdiction. [ECF No. 56]. The Court found that while Plaintiff alleged his fraud claims with particularity as required by Rule 9(b), Plaintiff failed to establish that the Court had personal jurisdiction over Datta and 4New. *Id.* at 6–19. Specifically, Plaintiff did not adequately allege that the Court had specific personal jurisdiction over 4New under sections 48.193(1)(a)(1) and 48.193(1)(a)(2) of the Florida Statutes and failed to allege specific personal jurisdiction under section 48.193(1)(a)(2) and general personal jurisdiction under section 48.193(2) for Datta. *See generally id.*

On October 30, 2024, Plaintiff filed a motion for leave to file a second amended complaint, [ECF No. 58], which the Court granted, [ECF No. 59]. On February 26, 2025, Plaintiff filed his Second Amended Complaint, the now operative complaint. [ECF No. 60]. The Second Amended Complaint asserts that the Court has specific personal jurisdiction over 4New under section 48.193(1)(a) because 4New (1) conducted business through its website and maintained its

"effective headquarters" in Florida from October 2019 to December 2021, SAC ¶¶ 17, 30, and (2) committed tortious acts (fraud) within Florda, SAC ¶ 17. Plaintiff also asserts that the Court has specific personal jurisdiction over Datta under section 48.193(1)(a) because Datta committed tortious acts (fraud) while in Florida. SAC ¶ 17. Plaintiff further alleges general personal jurisdiction over Datta under section 48.193(2), because he lived in Florida from October 2019 to December 2021; formed and operated at least six businesses under Florida law; rented commercial and residential properties in Florida; purchased a home in Florida; registered vehicles in Florida; maintained accounts with Bank of America in Florida; and utilized the services of Florida attorneys. SAC ¶¶ 58–70; Response at 2.

This case was transferred from the Honorable James Lawrence King to the undersigned on March 17, 2025. [ECF No. 63]. Datta and 4New subsequently filed the instant Motion on June 16, 2025, seeking dismissal of the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) on the grounds that the Court lacks personal jurisdiction. *See generally* Mot. Specifically, Datta and 4New contend that a court in Florida does not have general jurisdiction over them, and their limited contacts with this forum are not sufficiently related to Plaintiff's claims to confer specific jurisdiction. *See generally* Mot.; Reply. Datta submits an affidavit, [ECF No. 90-1], focusing on his and 4New's lack of contacts with the United States—and Florida—and supplying additional facts for the Court to consider in determining whether personal jurisdiction exists over Datta and 4New. In the affidavit, Datta provides the following facts.

Datta is a citizen of India and currently resides in the United Kingdom. [ECF No. 90-1] ¶ 3. Datta has never been a citizen of the United States or a citizen of the State of Florida. *Id.* ¶ 4. Datta did own a home in Florida located at 5715 N. Bay Road, Miami Beach, Florida 33140, but he sold that house in 2024. *Id.* ¶ 5. The Florida home was never Datta's primary residence, nor

did he intend to change his personal domicile to Florida. *Id.* Datta does not currently own any real estate in Florida, *id.* ¶ 19, and he does not maintain bank accounts in Florida. *Id.* ¶ 20.

During early 2018 through January 2, 2019, Datta was a resident of the United Kingdom and was living in the United Kingdom. *Id.* ¶ 9. On October 4, 2019, Datta was passing through Florida. *Id.* ¶ 22. Datta returned to Florida in December of 2019 for an extended vacation and to attend some business meetings unrelated to 4New or the substance of this lawsuit. *Id.* ¶¶ 13, 22. Datta came on a B1/B2 visa, which is a temporary, non-immigrant visa that allowed him to travel to the United States for either business or tourism purposes. *Id.* ¶ 13. Datta's B1/B2 visa limited his stay in the United States to 180 days. *Id.* ¶ 15. However, due to the global COVID-19 pandemic, Datta could not return to his home in the United Kingdom, and he was forced to seek and obtain an extension permitting him to stay in the United States beyond 180 days. *Id.* ¶¶ 14, 15. Until Datta could return to the United Kingdom in January 2021, he had to remain in Florida. *Id.* ¶ 16. Since he needed a place to live, he rented a condominium at 3131 N.E. 7th Avenue, Unit 4304, Miami, Florida 33137. *Id.* At no time did Datta intend to immigrate to the United States, and Datta never intended to remain in Florida permanently. *Id.* ¶ 17.

Datta was the Chairman of 4New—a private limited company formed under the United Kingdom's Companies Act of 2006 and incorporated on October 4, 2017—from its inception until December 2021. *Id.* ¶ 6. Any interaction that Datta had with Plaintiff would have been in the course and scope of his duties as Chairman of 4New, which in the United Kingdom has similar responsibilities to that of a Chief Executive Officer. *Id.* ¶¶ 7–8. 4New's headquarters was never located in Florida. *Id.* ¶ 18. And neither Datta nor 4New transacted any business in the State of Florida relating to Plaintiff. *Id.* ¶ 21.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a claim against it for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). When a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, Federal Rule of Civil Procedure 12(i) affords the district court "discretion on how to proceed." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (quoting *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021)). "The district court has two options: (1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss under a prima facie standard without an evidentiary hearing." *Id.* (citation and internal quotation marks omitted).

The plaintiff bears the initial burden of alleging sufficient facts in the complaint to make out a prima facie case of jurisdiction. *See Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020) (citation and internal quotation marks omitted). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for a directed verdict." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). If the plaintiff alleges sufficient facts to support the exercise of personal jurisdiction, "the burden shifts to the defendant to make a prima facie showing of the inapplicability of the [state's long-arm] statute." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citation and internal quotation marks omitted).

If the defendant raises a meritorious challenge to personal jurisdiction through affidavits, documents, or testimony, the burden then shifts back to the plaintiff to produce evidence supporting jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996); *Diulus*, 823 F. App'x at 848; *see also Future Tech.*, 218 F.3d at 1249 (noting that if defendant

"sustains this burden," then "plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." (citation and internal quotation marks omitted)).  And to the extent that "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *Meier*, 288 F.3d at 1269).

To determine whether personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon*, 985 F.3d at 1363–64 (quoting *Diamond Crystal*, 593 F.3d at 1257–58).  Thus, if Florida's long arm statute is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment, including "traditional notions of fair play and substantial justice." *Future Tech.*, 218 F.3d at 1249 (citation and internal quotation marks omitted).  Because the reach of Florida's long-arm statute is a question of state law, federal courts must construe the statute "as would the Florida Supreme Court[,] [and] [a]bsent some indication that the Florida Supreme Court would hold otherwise, federal courts are bound to adhere to decisions of Florida's intermediate courts." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274–75 (11th Cir. 2009) (quoting *Meier*, 288 F.3d at 1271 (cleaned up)).

## **ANALYSIS**

Plaintiff asserts that 4New's actions satisfy two sections of the Florida long-arm statute: first, that 4New was conducting business and maintained an office in Florida, satisfying section 48.193(1)(a)(1); and second, that 4New committed the tort of fraud within Florida, satisfying section 48.193(1)(a)(2).  SAC ¶¶ 17, 30.  Plaintiff also contends that Datta's actions satisfy two

sections of the Florida long-arm statute: first, that Datta committed the tort of fraud within Florida, satisfying section 48.193(1)(a)(2); and second, that Datta engaged in substantial and not isolated activity within Florida, satisfying section 48.193(2). *Id.* ¶¶ 17, 58–70; Response at 2. The Court addresses each set of arguments in turn.

### I. Personal Jurisdiction Over 4New

#### a. Section 48.193(1)(a)(1) of the Florida Statutes

Florida's long-arm statute provides specific jurisdiction where a nonresident defendant conducts or is "carrying on" business in Florida. Fla. Stat. § 48.193(1)(a)(1). "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech.*, 218 F.3d at 1249. Factors relevant to this inquiry include: (1) "the presence and operation of an office in Florida;" (2) "the possession and maintenance of a license to do business in Florida;" (3) "the number of Florida clients served;" and (4) "the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (citations omitted). Additionally, for this provision to apply, "there must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity." *Valencia v. Horizon Att'ys & Couns. at L. PLC*, No. 17-61205, 2017 WL 7792619, at *3 (S.D. Fla. Dec. 8, 2017) (citing *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)).

Here, Plaintiff points to 4New's website and participation in the North American Bitcoin Conference in Miami in January 2018 to establish that 4New carried out a general course of business in Florida. SAC ¶¶ 25–26. Plaintiff's argument, however, fails for the same reasons outlined in the Court's previous Order. [ECF No. 56] at 13–14 (finding 4New offering a waitlist

to potentially purchase KWATT insufficient to establish that 4New was operating a business in Florida under section 48.193(1)(a)(1)); *see also Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (holding "occasional and insignificant business operations" are insufficient to establish a "general course of business activity" under section 48.193(1)(a)(1)). Plaintiff does not allege that he attended the Conference and relies on 4New's website to form the basis for jurisdiction. But simply having a website that can be accessed in Florida is not sufficient to establish a general course of business activity under section 48.193(1)(a)(1). *See Jackson-Bear Grp., Inc. v. Amirjazil*, No. 2:10-CV-332-FTM-29, 2011 WL 1232985, at *4 (M.D. Fla. Mar. 30, 2011) (holding defendants' website, which is accessible in Florida, is not itself sufficient under section 48.193(1)(a) to show a general course of business in Florida); *see also Northwind Air Sys. v. Terra's Garden, LLC*, 273 So. 3d 1085, 1088 (Fla. 3d DCA 2019) ("However, [t]he mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible." (quoting *Trs. of Columbia Univ. in City N.Y. v. Ocean World, S.A.*, 12 So. 3d 788, 795 (Fla. 4th DCA 2009))).

Plaintiff also alleges that from October 2019 to December 2021, 4New's "effective headquarters" was located in Florida because "Sharma, 4NEW's President, and Datta, 4NEW's Chairman, resided in Florida and managed 4NEW's operations from the State of Florida." SAC ¶ 30. However, Datta asserts that "4New's headquarters were never in Florida." [ECF No. 90-1] ¶ 18; Mot. at 8. And Plaintiff's affidavit fails to rebut Datta's assertion. *See Sculptchair*, 94 F.3d at 627 (explaining that once a defendant raises a meritorious challenge to personal jurisdiction through affidavits, documents, or testimony, the burden then shifts back to the plaintiff to produce evidence supporting jurisdiction). In fact, Plaintiff's affidavit does not address 4New's headquarters whatsoever. *See* [ECF No. 91-1].

Further, the mere fact that Sharma and Datta may have engaged in business on behalf of 4New from their homes does not establish Florida as the location of the company's "effective headquarters." To be clear, at least one Florida court has determined that a home office may qualify for purposes of Florida's long-arm statute under certain circumstances. *Golant v. German Shepherd Dog Club of Am., Inc.*, 26 So. 3d 60, 63 (Fla. 4th DCA 2010). But such circumstances are simply not present here. In *Golant*, a former board member of the German Shepherd Dog Club of America sued the Club claiming she was improperly removed from office. *Id.* at 61–62. The plaintiff in *Golant* was a Florida resident, and the Club was a not-for-profit corporation organized under the laws of New York. *Id.* at 61. The Club, however, maintained no physical office in New York or anywhere else. *Id.* Rather, all of the Club's business was transacted through the actions of its board. *Id.* As a board member, the plaintiff in *Golant* "conducted Club business from her home in Florida." *Id.* The *Golant* court held that because "the Club maintains no physical office and [ ] Club business is conducted largely, if not exclusively, from the homes of its Board members," the plaintiff's home was a "*de facto* office of the Club" which satisfied section 48.193(1)(a). *Id.* at 63.

*Golant* is distinguishable from the instant case because unlike the Club in *Golant*, 4New maintains an office in London, and Plaintiff does not allege that 4New's business is exclusively conducted through home offices in Florida. SAC ¶ 16; *see also Doe (V.H.) v. Hyatt Hotels Corp.*, No. 23-13503, 2024 WL 3859882, at *2 (11th Cir. Aug. 19, 2024) ("[Defendants] do not have offices in Florida. While they have officers who live in and work from Florida, it cannot be said that this amounts to operating or managing the hotel from Florida. So any negligence in operation or management functions that caused Appellants' injury is not directly affiliated to their limited presence in Florida. And without this connection their presence is irrelevant." (citations and internal quotation marks omitted)). Accordingly, given that Florida's long-arm statute is strictly

construed, *see Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983), the Court has little difficulty in concluding that Plaintiff has failed to satisfy section 48.193(1)(a)(1) here.

### b. Section 48.193(1)(a)(2) of the Florida Statutes

In the alternative, Plaintiff relies on the "tortious acts within Florida" provision of the long-arm statute, which provides that an entity is subject to specific personal jurisdiction if, among other things, it "[c]ommit[s] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2).[1] Although section 48.193(1)(a)(2) creates personal jurisdiction for a non-resident's "tortious act within Florida," a defendant's physical presence "within Florida" is unnecessary. A non-resident can submit to Florida's jurisdiction by transmitting "into Florida" an electronic communication that results in a tort. *Wendt*, 822 So. 2d at 1260.

In the Second Amended Complaint, Plaintiff alleges that 4New committed tortious acts within Florida when it published false statements on its website, "which was accessible to the citizens of Florida." SAC ¶ 17. However, a non-resident's website, although accessible in Florida, results in no tort "committed within the state of Florida"—unless a person in Florida views the website. *World Media All. Label, Inc. v. Believe SAS*, No. 24-12079, 2025 WL 2102017, at *3 (11th Cir. July 28, 2025) (applying *Internet Sols. Corp. v. Marshall*, 39 So. 3d

---

[1] "In Florida, before a court addresses the question of whether specific jurisdiction exists under [section 48.193(1)(a)(2)], the court must determine 'whether the allegations of the complaint state a cause of action.'" *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Under Florida law, the essential elements of common law fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation and internal quotation marks omitted). Additionally, in cases where a plaintiff makes fraud-based claims, to be considered "well-pleaded," a plaintiff's complaint must meet the standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). For the reasons discussed in the Court's prior Order, the Court finds that Plaintiff has sufficiently pleaded all of the elements of fraud under Florida law as to 4New. [ECF No. 56] at 6–10.

1201, 1215 (Fla. 2010)).² Accordingly, a non-resident who uses a website to publish false statements submits to Florida's jurisdiction if the website bearing false statements is not only accessible in Florida but is also viewed in Florida.

Here, Plaintiff only alleges that 4New's website is "accessible to the citizens of Florida," SAC ¶ 17, and fails to allege that anyone in Florida actually accessed the website prior to the filing of this lawsuit. As Plaintiff does not allege that someone in Florida accessed 4New's website, Plaintiff fails to bring 4New within the ambit of section 48.193(1)(a)(2). Accordingly, the Court lacks personal jurisdiction over 4New under section 48.193(1)(a)(2).

Because this Court has concluded that Florida's long-arm statute does not provide a basis for the exercise of jurisdiction over 4New, the Court need not reach the next step of the analysis: whether exercising jurisdiction in this case would comport with due process.³ *World Media*, 2025 WL 2102017, at *4. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."

---

² In *World Media*, the Eleventh Circuit explained that "[a]lthough *Internet Solutions* arose in the context of defamation, its discussion involved postings on the World Wide Web generally — analyzing when 'a posting on a website, which is located on the World Wide Web, constitutes an electronic communication into Florida' . . . Its holding has been applied to various other contexts." 2025 WL 2102017, at *3 n.3 (quoting *Internet Solutions*, 39 So. 3d at 1210–15). Accordingly, *Internet Solutions* is applicable to the fraud claim here.

Further, Plaintiff cites *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), to support the contention that Florida's long-arm statute allows Florida to exercise personal jurisdiction over a non-resident who commits a tortious act by using a website that is accessible in Florida. But *Licciardello* pre-dates the Florida Supreme Court's governing directive in *Internet Solutions*, which requires not only that the website be accessible in Florida but also be *viewed* in Florida before a non-resident may be subject to Florida's jurisdiction under the long-arm statute. And in *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013), also cited by Plaintiff, the Eleventh Circuit held that a defendant's tortious act satisfied the requirements of section 48.193(1)(a)(2) because the defendant's website was accessible in Florida *and* trademark infringing goods were sold to Florida customers through the website.

³ In the Motion, 4New and Datta argue that the Court does not have general jurisdiction over 4New. Mot. at 15. Plaintiff, however, does not allege general jurisdiction over 4New in the Second Amended Complaint nor in his Response. Accordingly, the Court need not address this argument.

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). 4New is thus dismissed from this case for lack of personal jurisdiction.

## II. Personal Jurisdiction Over Datta

### a. Section 48.193(1)(a)(2) of the Florida Statutes

Plaintiff also alleges that the Court has personal jurisdiction over Datta because he committed tortious acts by making false statements to investors, including Day, about 4New's business and KWATT cryptocurrency while in Florida.[4] In the Second Amended Complaint, Plaintiff points to various false statements which the Court addresses below.

To begin, Plaintiff contends that he relied on the false statements Datta made during the North American Bitcoin Conference in Miami, Florida in January 2018 and the false statements Datta made between July 2018 and January 2019 when Plaintiff purchased 4New's KWATT. SAC ¶¶ 73, 74, 88, 89. However, in the Second Amended Complaint, Plaintiff fails to provide the Court with any statements that Datta made at the Conference which caused Plaintiff's alleged injury. SAC ¶¶ 44, 73; *see also* [ECF No. 56] at 15–16. Additionally, the Second Amended Complaint provides no allegations that Data made the statements between July 2018 and January 2019 while in Florida. SAC ¶¶ 87, 88, 90. Plaintiff's failure to allege Datta was in Florida when the statements between July 2018 and January 2019 were made renders the Second Amended Complaint legally insufficient to allege personal jurisdiction based on these tortious acts. *PK Computs., Inc. v. Indep. Travel Agencies of Am., Inc.*, 656 So. 2d 254, 255 (Fla. 4th DCA 1995) (holding a complaint is not legally sufficient to allege personal jurisdiction based on tortious acts when the complaint fails to

---

[4] Once again, because Plaintiff cites section 48.193(1)(a)(2) as a basis for jurisdiction over Datta, the Court must first address the question of whether the allegations in the Second Amended Complaint state a cause of action. *PVC Windoors,* 598 F.3d at 808. For the reasons discussed in the Court's prior Order, the Court finds that Plaintiff has sufficiently pleaded all the elements of fraud under Florida law as to Datta. [ECF No. 56] at 14–15.

allege that the acts were committed within Florida.).  And Plaintiff's allegation about Datta's false statement on July 26, 2019 is insufficient for the same reason.  SAC ¶ 90.

The Second Amended Complaint also alleges that Plaintiff relied on Datta's false statements from October 2019 to July 2020, which encouraged Plaintiff to hold onto the KWATT he purchased in anticipation of repayment.  SAC ¶¶ 90, 92, 96.  Plaintiff alleges that Datta began living and working in Florida on October 4, 2019, and made these false statements to Plaintiff thereafter.  SAC ¶ 91.  However, in his affidavit, Datta states: "[o]n October 4, 2019, [he] was passing through Florida.  [He] left Florida and returned in December 2019," he "came to the State of Florida in December of 2019 for an extended vacation and to attend to some business meetings unrelated to 4New or the substance of this lawsuit," and he has not "transacted any business in the State of Florida relating to Plaintiff."  [ECF No. 90-1] ¶¶ 13, 21, 22.  The Court finds that the affidavit properly refutes the Second Amended Complaint, and the burden thus shifts back to Plaintiff to provide evidence that Datta made false statements while living in Florida from October 2019 to December 2019.  *Meier*, 288 F.3d at 1269 ("Where . . . the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.").

Plaintiff, however, does not offer any evidence to rebut that Datta was not in Florida during the time period in question.  Indeed, careful review of Plaintiff's affidavit shows that it is completely devoid of any geographical references.  *See generally* [ECF No. 91-1].  While Plaintiff's affidavit does assert that Plaintiff and Datta exchanged over 500 text messages between August 31, 2018 and May 26, 2020, Plaintiff provides only one text message by way of example from November 12, 2018.  *Id.* ¶¶ 6–8.  But November 12, 2018 is not one of the dates referenced in the Second Amended Complaint as a time when Datta made a false statement to Plaintiff.  *See* SAC ¶ 79, 88.  Moreover, the November 12, 2018 text message includes no reference to Florida,

and the affidavit fails to identify the location of either party during this exchange. Thus, construing all reasonable inferences in favor of Plaintiff, *see Diamond Crystal*, 593 F.3d at 1257, there is simply nothing in Plaintiff's affidavit that establishes Datta was in Florida from October 2019 to December 2019.

As Datta has made a sufficient showing of the inapplicability of the long-arm statute, Plaintiff "is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Future Tech.*, 218 F.3d at 1249 (citation and internal quotation marks omitted). Plaintiff has failed to carry this burden by providing no evidence that Datta was in Florida when he made the false statements on October 30, 2019, November 26, 2019, or December 3, 2019. SAC ¶¶ 93–95. Accordingly, the Court finds that Plaintiff fails to allege personal jurisdiction over Datta under section 48.193(1)(a)(2).

### b. Section 48.193(2) of the Florida Statutes

General jurisdiction arises from a nonresident defendant's contacts with the forum state that are unrelated to the cause of action being litigated. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). Under Florida's long-arm statute, a defendant "who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). The Eleventh Circuit has determined that the reach of general jurisdiction under section 48.193(2) "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche v. Tamborlee Mgt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)). Thus, courts need only determine whether the exercise

of general jurisdiction over defendants would exceed constitutional bounds. *See id.*; *easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062, 2020 WL 5500695, at *14 (S.D. Fla. Sept. 11, 2020).

Here, Plaintiff argues that the Court has general jurisdiction over Datta because he lived in Florida from October 2019 to December 2021; formed at least six businesses under Florida law; worked and operated his businesses from a warehouse/office he rented in Fort Lauderdale; maintained accounts with Bank of America in Florida; rented apartments and purchased a home in Florida, which he has since sold; registered vehicles in Florida; and utilized the services of Florida attorneys. SAC ¶¶ 58–70; Response at 2. Plaintiff contends that such activities in Florida were substantial and not isolated, giving rise to this Court's general personal jurisdiction over Datta. SAC ¶ 70; Response at 2.

The Court is not persuaded for several reasons. First, as 4New and Datta rightly note, the Supreme Court has determined that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citations and internal quotation marks omitted); Mot. at 13–14. "Beyond [being domiciled in the forum], the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is proper: where the individual consents to the forum's jurisdiction, and where the individual is present within the forum when served with process." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1350 (S.D. Fla. 2017) (citation omitted). Neither of the exceptions apply in this case because Datta was not served in Florida and never consented to jurisdiction in Florida.

Beyond these two exceptions, it is well-established that for individuals, general jurisdiction is limited to the individual's domicile. *See, e.g.*, *easyGroup Ltd.*, 2020 WL 5500695, at *14 (concluding the court did not have general personal jurisdiction over an individual defendant because he was a citizen and resident of Colombia who was not served in and did not consent to

jurisdiction in Florida); *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) (concluding general personal jurisdiction over defendant was lacking because he was a citizen of Brazil and Italy, was a resident of France, and was neither served in nor consented to jurisdiction in Florida); *Mar. Exec., LLC v. Larson Elecs., LLC*, No. 17-60323, 2018 WL 2938376, at *3 (S.D. Fla. June 11, 2018) (finding no general jurisdiction where the defendant was "a resident of Texas, [and] [ ] was not served in and did not consent to jurisdiction in Florida."); *Dohler S.A. v. Guru*, No. 16-23137, 2017 WL 4621098, at *4 (S.D. Fla. Oct. 16, 2017) (stating general jurisdiction was improper because the defendants were "both residents of North Carolina, [and] were not served in and did not consent to jurisdiction in Florida.").

Here, it is undisputed that Datta does not reside in Florida. Datta's affidavit states that he has been residing in the United Kingdom since January 2021. [ECF No. 90-1] ¶¶ 3, 16. Further, the Second Amended Complaint acknowledges that "Datta is a citizen of both India and the United Kingdom." SAC ¶ 15. And Datta declares in his affidavit that he has never been a citizen of the United States, nor a citizen of the State of Florida. [ECF No. 90-1] ¶ 4. Datta further avers that although he did own a residence in this jurisdiction, which he sold in 2024, the residence was not his primary residence, and he did not intend to remain in Florida. *Id.* ¶ 5. Moreover, Datta confirms that he did not intend to change his personal domicile to Florida, and he came to vacation in Florida on a temporary 180-day visa. *Id.* ¶¶ 5, 13–15.

Plaintiff details how Datta "was living" in Miami but moved out of the state nineteen months before this action was filed. Response at 17–18; *see generally* Compl. But this does not establish Datta's domicile in Florida. Florida courts have found that general jurisdiction must be based on current substantial activity within Florida—not exclusively past or isolated activity. *See Murphy v. Murphy*, 342 So. 3d 799, 804–06 (Fla. 1st DCA 2022) (finding defendant who had moved out of Florida about seven months before plaintiff filed suit against him was not subject to

personal jurisdiction in Florida, even though he had previously engaged in "robust contacts" within Florida). Similarly, Datta's businesses that share an address in Fort Lauderdale do not establish Datta's domicile in Florida; this address merely establishes the business entities' place of business. SAC ¶¶ 62–66; *see Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1291 (S.D. Fla. 2021) (explaining that defendant's businesses, which shared a Miami address, did not establish defendant's domicile in Florida given that defendant was a resident of Dubai).

In sum, the Court finds that Plaintiff has failed to establish personal jurisdiction over Datta under Florida's long-arm statute; accordingly, the Court once again forgoes the Due Process analysis. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006) ("Because [the defendant] is not subject to jurisdiction under Florida's long-arm statute, we need not address whether the Due Process Clause permits jurisdiction."). Datta is thus dismissed from this case for lack of personal jurisdiction.

### III. Leave to Amend

Plaintiff has not moved for leave to file a third amended complaint. *See Long v. Satz*, 181 F.3d 1275, 1279–80 (11th Cir. 1999) ("Failure to properly request leave to amend, when [a plaintiff] had adequate opportunity and time to do so, precludes the . . . argument . . . that the district court abused its discretion by denying her leave to amend her complaint."). And, given that the parties have already conducted extensive jurisdictional discovery and Plaintiff has filed two amended complaints, the Court does not see how a new pleading would cure the jurisdictional defects identified herein. *See Wade v. Daniels*, 36 F.4th 1318, 1328 (11th Cir. 2022) ("[A] district court can deny leave to amend the complaint when amendment would be futile."); *see also McTizic v. Bayerische Motoren Werke Aktiengesellschaft*, 834 F. App'x 564, 566 (11th Cir. 2021) ("[W]e conclude the district court did not abuse its discretion in denying further leave to amend. The court gave [plaintiff] two opportunities to amend, and she has not shown how additional

amendment would cure the pleading defects it identified."); *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc*., 673 F. App'x 925, 930 (11th Cir. 2016) ("[The Eleventh Circuit] ha[s] never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor . . . concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so.").

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants Varun Datta and 4New Ltd.'s Renewed Motion to Dismiss, [ECF No. 90], is **GRANTED**.

2. Plaintiff's claims against Defendants Varun Datta and 4New Ltd. are **DISMISSED** *without prejudice* for lack of personal jurisdiction.

3. The Clerk is directed to **TERMINATE** Defendants Varun Datta and 4New Ltd.

4. On November 12, 2025, the Court stayed this action pending the adjudication of Defendants Varun Datta and 4New Ltd.'s Renewed Motion to Dismiss. [ECF No. 94]. Now that the Renewed Motion to Dismiss has been adjudicated, the Clerk is directed to **REOPEN** the case. The stay previously imposed by the Court is hereby **LIFTED**.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of February, 2026.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**